IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| REALTY TRUST GROUP, INC. | § | PLAINTIFF |
| | § | |
| V. | § | Civil No. 1:07CV573-HSO-JMR |
| | § | |
| ACE AMERICAN INSURANCE | § | |
| COMPANY, *et al.* | § | DEFENDANTS |

<u>ORDER AND REASONS REMANDING CASE</u>

This cause comes before the Court *sua sponte*, upon its October 15, 2007,
Order [29-1], which requested briefing on the issue of the Court's subject matter
jurisdiction, following the voluntary dismissal by Plaintiff of Defendants Allied
World Assurance Company, Ltd. ["AWAC"] and Max Re Ltd. ["Max Re"], from this
action on June 14, 2007 [15-1], and pursuant to Federal Rule of Civil Procedure
12(h)(3).

Certain Insurer Defendants filed a Brief in Support of the Court's Subject
Matter Jurisdiction on November 5, 2007 [32-1], which was joined by Defendant
Nutmeg Insurance Company on November 6, 2007 [34-1] and Plaintiff Realty Trust
Group ["RTG" or "Plaintiff"] on November 9, 2007 [37-1].  Intervenor Defendant
Sears Holdings Corporation ["Sears"] filed a Response [39-1].  In their Brief, Certain
Insurer Defendants also incorporated by reference arguments presented in their
briefs related to a motion to remand in *Sears Holdings Corporation v. Ace American
Insurance Company, et al.*, Civil Action No. 1:06-cv-1263-HSO-JMR, which was
formerly pending in this Court.

Sears filed a Memorandum of Law on the Issue of Subject Matter Jurisdiction on November 5, 2007 [33-1], requesting dismissal of this lawsuit for lack of subject matter jurisdiction.  Plaintiff and Certain Insurer Defendants filed Responses, [36-1] and [38-1], respectively, and Sears filed a Rebuttal [40-1].

The Court, having considered the pleadings on file, the briefs and arguments of the parties, and the relevant legal authorities, finds that this case must be remanded to state court.

## I.  FACTS AND PROCEDURAL HISTORY

Realty Trust Group, Inc. ["RTG" or "Plaintiff"] filed its Complaint [1-3] in the Circuit Court of Harrison County, Mississippi, First Judicial District, on or about August 29, 2006, claiming rights to insurance proceeds under policies issued by various insurance companies to Sears Holdings Corporation ["Sears"].  *See* Compl., Ex. "A" to Notice of Removal.  The Complaint named sixteen (16) Defendant insurance companies.

On or about April 25, 2007, those Defendants who had then been served ["Removing Defendants"] removed the case to this Court pursuant to 9 U.S.C. § 205, based on foreign arbitration provisions contained in Sears' insurance policies with named Defendants Allied World Assurance Company ("AWAC") and Max Re Limited ("Max Re").  *See* Notice of Removal, at ¶¶ 3-8; Compl., at ¶ 1.  Removing Defendants also asserted that this Court possessed original federal question jurisdiction over the claims of the remaining, nonsignatory Defendants, pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards

2

[the "Convention"]. *See* Notice of Removal, at ¶ 9.  On or about April 27, 2007, Sears filed a Motion to Intervene pursuant to Federal Rule of Civil Procedure 24,[1] which was granted by the Court as unopposed on May 18, 2007.

On June 14, 2007, RTG voluntarily dismissed Defendants AWAC and Max Re without prejudice [15-1], pursuant to Federal Rule of Civil Procedure 41(a)(1).  The Court then ordered briefing on the issue of subject matter jurisdiction on October 15, 2007, which is currently before the Court.

## II. DISCUSSION

As noted above, this case was removed pursuant to 9 U.S.C. § 205, based on foreign arbitration provisions contained in Sears' insurance policies with named Defendants AWAC and Max Re.  *See* Notice of Removal, at ¶¶ 3-8; Compl., at ¶ 1. Removing Defendants assert that this Court also had original jurisdiction over the claims of the remaining, nonsignatory Defendants who are still in the case following the dismissal of AWAC and Max Re. *See* Notice of Removal, at ¶ 9.

The existence of subject matter jurisdiction over a removed state court action is determined at the time of the removal.  *See In re Bissonnet Investments LLC*, 320 F.3d 520, 525 (5th Cir. 2003); *Bank One Texas Nat. Ass'n v. Morrison*, 26 F.3d 544, 547 (5th Cir. 1994).  There is no dispute that removal was proper, and that federal question jurisdiction existed, at least as to the claims against AWAC and Max Re.

---

[1]  Sears also filed a Motion to Intervene on or about April 16, 2007, in state court, pursuant to Mississippi Rule of Civil Procedure 24; however, the case was apparently removed before that Motion was addressed by the court, as the Motion was noticed for hearing for April 27, 2007, which would have been two days after the case was removed.  *See* Motion to Intervene, Ex. "A" to Notice of Removal, Part 4, at p. 33; Notice of Hearing, Ex. "A" to Notice of Removal, Part 4, at p. 35.

Because both AWAC and Max Re have been dismissed from this case, the question now presented is whether this Court had at the time of removal, and therefore retains, original federal question jurisdiction over the claims asserted against the remaining, nonsignatory Defendants ["Remaining Defendants"], pursuant to 9 U.S.C. § 203, and if not, whether the Court can continue to exercise supplemental jurisdiction over the claims asserted against the remaining Defendants based upon the apparent lack of diversity of citizenship among the parties.

A.    Court's Original Jurisdiction

"An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States.  The district courts of the United States ... shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."  9 U.S.C. § 203.

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending.

9 U.S.C. § 205.

Removal pursuant to this statute occurred prior to the dismissal of AWAC and Max Re.  In general, the Convention applies to an arbitration agreement if: (1) there is a written agreement to arbitrate the dispute; (2) the agreement provides for arbitration in the territory of a signatory to the convention; (3) the agreement arises out of a commercial legal relationship; and (4) the agreement is not solely between

4

citizens of the United States. *See Sedco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1144-45 (5th Cir. 1985) (*citing Ledee v. Ceramiche Ragno*, 684 F.2d 184, 185-86 (1st Cir.1982)). If these requirements are met, the Convention requires district courts to order arbitration. *See id.* at 1145.

In this case, the parties do not dispute that the arbitration provisions in AWAC and Max Re's policies fall under the Convention or that this case was properly removed from state court. The issue now presented is whether the claims asserted by RTG against Remaining Defendants, who were nonsignatories to the arbitration provisions in question, fell within the scope of the Convention, and thus vested the Court with original federal question jurisdiction over those claims. If not, the Court must decide whether to exercise supplemental jurisdiction over the remaining claims in this case.

Remaining Defendants aver that this Court had original jurisdiction over the claims asserted against them because (1) even as nonsignatories to the policies between Sears and Max Re and AWAC, which contained the arbitration provisions in question, they have the right to compel arbitration of RTG's claims against them because RTG alleges concerted, improper activity against both signatory and nonsignatory Defendants, and (2) the results of the arbitration involving Max Re and AWAC may impact any pending court case involving Remaining Defendants. *See* Br. of Certain Insurer Defs. in Supp. of Ct.'s Subject Matter Jurisdiction, at pp. 3-4. Intervenor Defendant Sears counters that the dismissal of AWAC and Max Re from this lawsuit eliminated the sole basis upon which subject matter jurisdiction

existed in this case.  *See* Sears' Mem. of Law Submitted Pursuant to the Court's

Rule 12(h)(3) Order, at p. 1.

    1.   <u>Remaining Defendants' Right to Compel Arbitration</u>

    In general, courts recognize a strong federal policy in favor of arbitration, and

any doubts about the scope of an agreement are to be resolved in favor of

arbitration; however, as the Fifth Circuit has noted, it "will allow a nonsignatory to

invoke an arbitration agreement only in rare circumstances."  *Westmoreland v.*

*Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002).  Theories by which a nonsignatory may

compel a signatory to arbitrate include:  (1) incorporation by reference; (2)

assumption; (3) agency; (4) veil-piercing/alter ego; (5) estoppel; and (6) third-party

beneficiary.  *See Hellenic Investment Fund, Inc. v. Det Norske Veritas,* 464 F.3d 514,

517 (5th Cir. 2006).  As noted above, the nonsignatory Remaining Defendants

contend that they have a right to compel arbitration of RTG's claims, such that

original federal question jurisdiction under the Convention continues to exist.

    In support of this contention, Remaining Defendants argue that RTG has

alleged concerted, improper activity against signatory as well as nonsignatory

Defendants, which goes to an estoppel theory.  *See Hellenic Investment Fund, Inc.,*

464 F.3d at 517.  As the Fifth Circuit recognized in *Grigson v. Creative Artists*

*Agency, LLC*, 210 F.3d 524 (5th Cir. 2000), a nonsignatory may compel arbitration

under an equitable estoppel theory if it demonstrates that the case fits one of two

different circumstances: (1) "'when the signatory to a written agreement containing

an arbitration clause must rely on the terms of the written agreement in asserting

its claims against the nonsignatory' "; or (2) "'when the signatory to the contract

containing an arbitration clause raises allegations of substantially interdependent

and concerted misconduct by both the nonsignatory and one or more of the

signatories to the contract.' " *Id.* at 527 (*quoting MS Dealer Serv. Corp. v. Franklin*,

177 F.3d 942, 947 (11th Cir. 1999)) (emphasis omitted).

The first *Grigson* test does not appear to be applicable to this case.

Remaining Defendants do not contend that RTG must rely on the terms of Sears'

written agreements with Max Re and AWAC in asserting its claims against

Remaining Defendants.  Moreover, RTG is not a signatory.  The Court is also of the

opinion that RTG's claims relate to each individual insurance company's All Risk

Policy.

As for the second *Grigson* test, Remaining Defendants argue that RTG's

Complaint includes allegations of concerted misconduct by and among all

Defendants.  *See* Br. of Certain Insurer Defs. in Supp. of Ct.'s Subject Matter

Jurisdiction, at p. 4.  There are only two portions of the Complaint that arguably

allege any concerted misconduct.  In Paragraph 26 of its Complaint, RTG alleges

that it "is informed and believes and thereon alleges that, at all material times

herein alleged, the Defendants, and each of them, were agents, servants and

employees of the other defendants, and each of them."  Compl., at ¶ 26.  Paragraph

30 states that "Sears' All Risk Policies [were] comprised of a single manuscript

insurance policy contract to which each of the Defendant Insurance Companies

7

participated or sold a certain percentage of all risk property insurance coverage at various primary and/or excess layers, subject to their respective policy forms and endorsements."  Compl., at ¶ 30.

In applying the second *Grigson* test, the Fifth Circuit adopted the Eleventh Circuit's "intertwined-claims" analysis for equitable estoppel.  *See Grigson*, 210 F.3d at 527-28.  The Fifth Circuit determined that the district court did not abuse its discretion in compelling arbitration by applying the equitable estoppel doctrine, because the claims asserted  against the signatory and nonsignatories were intertwined with, and dependent upon, the distribution agreement in question, including, but not limited to, both the signatory and nonsignatories being charged with interdependent and concerted misconduct.  *See id.*, at 530-31.

However, the arbitration provisions in question in this case were contained in two policy provisions or endorsements that were separate from those applicable to Remaining Defendants, and the claims against the signatory and nonsignatory Defendants do not appear to be intertwined in the fashion contemplated by *Grigson*. Unlike other Fifth Circuit cases permitting nonsignatories to compel arbitration, RTG did not affirmatively plead conspiracy as between the signatory and nonsignatory Defendants. *See, i.e., Ford Motor Co. v. Ables*, 207 Fed. Appx. 443, 2006 WL 3431602, *5 (5th Cir. November 29, 2006) (allowing nonsignatory to compel arbitration when state court plaintiffs' allegations against nonsignatory Ford and signatory GCFM included that the state-court defendants "intentionally, willfully, maliciously and tortiously conspired between themselves and with others

to unlawfully injure Plaintiffs" and that their "scheme was calculated to and in fact did cause Plaintiffs to purchase vehicles from [GCFM] based on false and fraudulent representations").

In *Brown v. Pacific Life Insurance Co.*, 462 F.3d 384, 398-99 (5th Cir. 2006), the Fifth Circuit held that the second *Grigson* test is satisfied when the claims against the nonsignatory depend "in some part" on the tortious conduct of the signatory. *See Brown*, 462 F.3d at 398-99. As noted in *Palmer Ventures LLC v. Deutsche Bank AG,* 2007 WL 4105219 (5th Cir. November 19, 2007),[2] "[k]ey to the decision in *Brown* was the fact that none of the claims against the non-signatories could be considered without analyzing the 'tortious acts' of the signatories.'" *Palmer Ventures*, 2007 WL 4105219, at *6. In this case, Remaining Defendants do not explain how RTG's claims against them would necessarily require the Court to consider any tortious acts committed by AWAC or Max Re. *See id.* RTG does not advance a conspiracy claim, but asserts bad faith claims handling, breach of contract, and tortious breach of the implied covenant of good faith and fair dealing, and asks for declaratory relief and monetary damages. *See* Compl., at pp. 17-21. All of these claims require a fact-specific analysis of the individual insurance policy provisions or endorsements issued by each of the Remaining Defendants and the actions of each in handling their respective claims. None require the analysis of the alleged tortious acts of signatories AWAC and Max Re. Consequently, the facts of

---

[2] While *Palmer Ventures* is a non-precedential, unpublished opinion, pursuant to Fifth Circuit Rule 47.5.4, it is nonetheless persuasive.

this case do not fulfill the requirements of the second *Grigson* test.

    2.    <u>Potential Impact of Arbitration Results</u>

    Although Remaining Defendants are careful to state that they do not concede that arbitration results involving AWAC and Max Re would bind them, they nevertheless argue that RTG may use any favorable arbitration outcome as a basis for asserting collateral estoppel against them. *See* Br. of Certain Insurer Defs. in Supp. of Ct.'s Subject Matter Jurisdiction, at p. 4.

    Remaining Defendants cite *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 166 (5th Cir. 1998), for the proposition that an arbitration award can be enforced in subsequent proceedings against parties who did not participate in the arbitration. *See* Br. of Certain Insurer Defs. in Supp. of Ct.'s Subject Matter Jurisdiction, at p. 4. The result in *Nauru* was premised on the fact that the nonsignatories were effectively third-party beneficiaries of the contract in question. *See Nauru Phosphate Royalties, Inc.*, 138 F.3d at 166. The record in this case lacks sufficient evidence to support a finding that any of the Remaining Defendants were third party beneficiaries of Sears' insurance policies with Max Re and/or AWAC. As such, the holding in *Nauru* is inapposite here.

    The Fifth Circuit also noted in *Nauru* that the same interests were at stake as between the signatory and nonsignatory entities, that there existed sufficient identity of interests among the entities, and that the two nonsignatories had notice that liability on the promissory note would be resolved by the arbitration panel. *See*

*Phosphate Royalties, Inc.*, 138 F.3d at 166.  In the present case, while there may be similar general interests at stake between or among all of the insurance companies, because of the fact-specific inquiry necessary for a determination of claims such as bad faith claims handling, breach of contract, and tortious breach of the implied covenant of good faith and fair dealing, the Court is of the opinion that the interests of AWAC and Max Re and those of Remaining Defendants are not sufficiently identical to fall within the scenario presented in *Nauru*.  As noted above, Remaining Defendants do not concede that arbitration results would be binding on them.  *See* Br. of Certain Insurer Defs. in Supp. of Ct.'s Subject Matter Jurisdiction, at p. 4.  Nor does it appear from the record that there has been any notice to Remaining Defendants that the question of their liability will be conclusively decided in AWAC or Max Re's arbitration proceedings with Sears and/or RTG.

This Court is mindful that, in applying the language of 9 U.S.C. § 205, the Fifth Circuit has construed the phrase "relates to" very broadly in cases removed under the Convention, and has cautioned that the district court should initially deny remand as long as a defendant's asserted, arbitration-related defenses are not "facially frivolous."  *Certain Underwriters at Lloyd's, London and Other Insurers Subscribing to Reinsurance Agreements F96/2922/00 and No. F97/2992/00 v. Warrantech Corp.*, 461 F.3d 568, 575 (5th Cir. 2006) (*citing Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002)).  While Max Re and AWAC's defenses related to their arbitration provisions falling under the convention were not "facially frivolous," as

11

discussed in more detail above, the Court is of the opinion that the arbitration-related defenses suggested by Remaining Defendants in an effort to invoke jurisdiction rest upon entirely too tenuous a connection to the Max Re and AWAC policies to fall within the admittedly broad ambit of the "relates to" language. There is simply insufficient evidence to support a finding that Remaining Defendants were somehow third-party beneficiaries of the arbitration provisions as between Sears and AWAC and Max Re.  It seems clear from the record that, instead, Remaining Defendants each had a direct contractual relationship with their insured, and for whatever reason, elected not to include an arbitration provision in their policy provisions with Sears.  As such, the Court is of the opinion that it did not, and does not, have original federal question jurisdiction over RTG's claims against Remaining Defendants.

B.   <u>Should the Court Exercise Supplemental Jurisdiction?</u>

When a case presents a federal question, the court has supplemental jurisdiction over state law claims which are part of the same case or controversy. *See* 28 U.S.C. § 1367.  Because the Court had original jurisdiction over RTG's claims against AWAC and Max Re, but not over the claims against Remaining Defendants, the question presented is whether the Court should continue to exercise supplemental jurisdiction over the remaining claims now that AWAC and Max Re have been dismissed.

"[T]he mandatory nature of 28 U.S.C. § 1367(a)... provides that a district court 'shall' have supplemental jurisdiction over claims 'so related to' claims within

the court's original jurisdiction."  *Certain Underwriters at Lloyd's, London and*

*Other Insurers Subscribing to Reinsurance Agreements F96/2922/00 and No.*

*F97/2992/00 v. Warrantech Corp.*, 461 F.3d 568, 578 (5th Cir. 2006) (hereinafter,

"*Certain Underwriters at Lloyd's, London*").  However, 28 U.S.C. § 1367(c) lists

several factors which a district court should consider in deciding whether to decline

supplemental jurisdiction over remaining state law claims.  The Court should

decline to exercise supplemental jurisdiction over the remaining claim if

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over
> which the district court has original jurisdiction,
> (3) *the district court has dismissed all claims over which it has original*
> *jurisdiction*, or
> (4) in exceptional circumstances, there are other compelling reasons for
> declining jurisdiction.

28 U.S.C. § 1367(c) (emphasis added).

In considering these factors, the Fifth Circuit has announced its "'general

rule' [is] that courts should decline supplemental jurisdiction when all federal

claims are dismissed or otherwise eliminated from a case."  *Certain Underwriters at*

*Lloyd's, London*, 461 F.3d at 578.  In support of this "general rule," the Fifth Circuit

observed that in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), the Supreme

Court held that "if the federal claims are dismissed before trial, even though not

insubstantial in a jurisdictional sense, the state claims should be dismissed as

well.*" See Certain Underwriters at Lloyd's, London*, 461 F.3d at 578-79 (*quoting*

*United Mine Workers*, 383 U.S. at 726).

13

In *Certain Underwriters at Lloyd's, London*, "all claims with even a tenable connection to federal jurisdiction were dismissed very early in the litigation." *Id.* at 578. Therefore, the Fifth Circuit concluded that "the absence of any claims with any connection to federal law at such an early point in litigation suggests that the district court abused its discretion in exercising supplemental jurisdiction over [the remaining] state-law counterclaims." *Id.* at 579.

This case was filed on or about August 29, 2006, and removed to this Court on April 25, 2007. There has been no initial Case Management Conference, and the case is not set for trial. To the Court's knowledge, no discovery has been conducted. Because the only claims over which this Court had original federal jurisdiction were dismissed at a very early stage of the litigation, the Court is of the opinion that it should not exercise supplemental jurisdiction over the remaining state law claims, particularly since the Court recently remanded to state court a nearly identical lawsuit involving substantially the same parties and issues. Judicial economy and the interests of justice further counsel in favor of remand. Based on the foregoing, remand is required.

### III.  CONCLUSION

After reviewing the relevant pleadings and evidence on file, as well as the applicable law, and for the reasons more fully stated herein, the Court finds that remand to state court is appropriate.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the above-captioned cause is hereby remanded to the Circuit Court of Harrison County,

14

Mississippi, First Judicial District, and that a certified copy of this Order of remand shall be mailed by the Clerk to the clerk of the state court.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, all remaining pending motions are hereby **DENIED AS MOOT**.

**SO ORDERED AND ADJUDGED**, this the 11th day of December, 2007.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE

15